1:15 MJ 4075

## AFFIDAVIT OF JEFFREY L. WILSON

I, Jeffrey L. Wilson, Special Agent of the United States Army Criminal Investigation Command, United States Department of Defense, hereinafter referred to as "Affiant," being duly sworn an oath, hereby depose and state as follows:

### INTRODUCTION

1. Affiant is a Special Agent ("SA") of the United States Army Criminal Investigation Command ("CID") and is authorized to enforce the criminal laws of the United States concerning any offense over which the Army has investigative authority. Under 10 U.S.C. § 807, Affiant is authorized to arrest for violations of 10 U.S.C. §§ 877-934; and, under 28 C.F.R. §§ 60.2 and 60.3, he is authorized to request and execute federal search warrants. Affiant has been employed by the CID since September 1989, and has been assigned to the investigation of fraud-related crimes in the Columbus Fraud Resident Agency ("CFRA") for approximately two and a half years. Affiant has been charged with the investigation of federal crimes involving theft of public funds, conspiracy, wire fraud, identity theft, and other general criminal offenses in the Northern District of Ohio, and elsewhere. At all times during the investigation described in this affidavit, Affiant has acted in an official capacity as a SA of the CID.

2. Affiant has participated in all of the usual methods of investigation, including, but not limited to, the questioning of witnesses, and the analysis of evidence.

3. This affidavit is offered in support of a Complaint and Summons for JACK LORI REPPART ("REPPART"), charging a single count of Theft of Government Money in violation of Title 18, United States Code, Section 641.

4. The statements contained in this affidavit are based in part on information developed by other SAs of the CID who aided in the investigation of the theft of government money described herein. Unless otherwise noted, whenever in this affidavit your Affiant asserts

1

that a statement was made, the information was provided by another law enforcement officer or an investigator, who had either direct or hearsay knowledge of the statement, to whom your Affiant has spoken or whose report your Affiant has read and reviewed. Likewise, any information pertaining to personal data on subjects, and record checks, has been obtained through the Law Enforcement Automated Data System, various state driver's license and motor vehicle records, online database searches or the National Crime Information Center computers, and various open source databases such as CLEAR.

5. Since this affidavit is being submitted for the limited purpose of supporting the application in this matter, Affiant has not included each and every fact known to him concerning this investigation. Affiant has set forth only the facts that he believes are necessary to establish the probable cause for the issuance of the complaint and arrest warrant sought.

## FACTS AND CIRCUMSTANCES REGARDING PROBABLE CAUSE

6. In or around September 2005, the National Guard Bureau ("NGB") entered into a contract with Document and Packaging Broker, Inc. ("Docupak") to administer a program called the Guard Recruiting Assistance Program ("G-RAP"). G-RAP was designed to increase the number of soldiers available during a time that the United States was at war. Specifically, G-RAP offered part-time soldiers and military retirees money to assist in the recruiting effort by identifying and encouraging civilians who they knew to serve in the Army National Guard and other military branches.

7. An individual who desired to participate in G-RAP was required to apply online through Docupak to become a civilian contractor, known as a Recruiting Assistant ("RA"). The application process included mandatory training that answered frequently asked questions, identified eligible participants, and set forth duties and responsibilities. An RA was required to assist, mentor, and refer the potential soldier to a local military recruiter. Referrals from military

2

recruiters were specifically prohibited. The training reminded participants to uphold the Army values and act ethically at all times.

8. G-RAP called for an RA to establish a password-protected online account in his or her name to record recruiting efforts. The RA used his or her online account to input the name, Social Security Account number, and other personally identifiable information ("PII") of potential soldiers whom the RA was referring for recruitment. RA's were required to obtain this PII from the potential soldier directly and with the potential soldier's consent for recruitment purposes. RA's were informed that obtaining this sensitive information in any other way would be grounds for suspension and/or termination from the program, as well as referral to law enforcement for investigation.

9. Under G-RAP, an RA could receive $1,000 for every potential soldier who enlisted and another $1,000 once the potential soldier shipped to basic combat training. RA's generally received the recruiting referral payments via direct deposit in a bank account designated by the RA.

10. The Department of Defense identified fraud in the G-RAP program where RA's were indirectly obtaining the PII of recently enlisted soldiers—usually from military recruiters or other officials who had access to this sensitive information—and nominating these new solders through G-RAP. By these fraudulent nominations, these RA's would receive incentive money despite having played no part in the recruitment of these new soldiers. The Department of Defense tasked CID with identifying and investigating fraud in the G-RAP program.

11. On April 9, 2014, CID requested CFRA initiate an investigation of REPPART. This request was based upon interviews of potential soldiers nominated by REPPART through G-RAP that denied knowing REPPART and/or providing him with their PII.

12. REPPART was a G-RAP RA from November 9, 2006, through December 12, 2011. He completed G-RAP training on November 9, 2006, and again on November 3, 2007.

REPPART nominated sixty-seven (67) potential soldiers through G-RAP. He was paid $36,000 for 18 potential soldiers that enlisted and shipped to basic combat training. Seventeen (17) of the potential soldiers that REPPART received G-RAP payments for were interviewed. Seven (7) potential soldiers stated they did not know REPPART and did not authorize him to use their PII for G-RAP nomination. Specifically:

    a.    On January 22, 2008, REPPART logged in to the G-RAP website using his username and password and submitted a nomination for potential soldier L.S., whose name is known to me but identified here by initials. REPPART represented that he met L.S. less than two weeks before January 22, 2008. He also represented that he assisted L.S. with enlisting in the Ohio Army National Guard ("OANG"). REPPART further represented that L.S. provided his PII to him for the purposes of nominating L.S. through G-RAP. REPPART knew each of these representations to be false. REPPART stated that he met L.S. "[w]earing [his] Guard wearable out and about." This statement was also false. In truth and in fact, L.S. enlisted in the OANG after speaking with a military recruiter who he approached directly and who he was not referred to by an RA. Your Affiant interviewed L.S. on April 29, 2014, at which time L.S. stated he provided his PII to his recruiter and no one else. L.S. denied speaking with REPPART or receiving assistance with enlisting in the OANG from him. L.S. did not give his PII to REPPART.

    b.    On June 18, 2006, REPPART logged in to the G-RAP website using his username and password and submitted a nomination for potential soldier J.M., whose name is known to me but identified here by initials. REPPART represented that he met J.M. on or about June 18, 2006. He also represented that J.M. provided his PII to him for the purposes of nominating J.M. through G-RAP. REPPART further represented that he helped J.M. enlist into the OANG. REPPART knew each of these representations to be false. In truth and in fact, REPPART did not provide J.M. with recruiting assistance, and J.M. did not provide his PII to REPPART. Your Affiant interviewed J.M. on April 29, 2014, at which time J.M. confirmed that he did not know

REPPART. J.M. enlinsted with the OANG directly with a military recruiter and did not go through an RA. J.M. began the enlisting process in or around January of 2006. J.M. provided his PII only to the Military Entrance Process Station ("MEPS"), that screens and processes applicants into the Unites States Armed Forces, and to the military recruiter who helped him enlist. J.M. did not give his PII to REPPART.

    c.    On March 4, 2008, REPPART logged in to the G-RAP website using his username and password and submitted a nomination for potential soldier N.K., whose name is known to me but identified here by initials. REPPART represented that he met N.K. less than two weeks before March 4, 2008. He also represented that N.K. provided his PII to him for the purposes of nominating N.K. through G-RAP. REPPART further represented that he helped N.K. enlist into the OANG. REPPART knew each of these representations to be false. In truth and in fact, REPPART did not know N.K., he did not obtain N.K.'s PII from N.K., and he did not provide recruiting assistance to N.K. Your Affiant interviewed N.K. on April 29, 2014, at which time N.K. denied knowing REPPART. N.K. enlisted directly with a military recruiter without the assistance of an RA. N.K. provided his PII only to the MEPS and to the military recruiter who helped him enlist. N.K. did not give REPPART his PII.

    d.    On October 22, 2006, REPPART logged in to the G-RAP website using his username and password and submitted a nomination for potential soldier D.A., whose name is known to me but identified here by initials. REPPART represented that he met D.A. on or about October 22, 2006. He also represented that D.A. provided his PII to him for the purposes of nominating D.A. through G-RAP. REPPART further represented that he helped D.A. enlist into the OANG. REPPART knew each of these representations to be false. In truth and in fact, REPPART did not know D.A., he did not obtain D.A.'s PII from D.A., and he did not provide recruiting assistance to D.A. Your Affiant interviewed D.A. on August 1, 2014, at which time

D.A. confirmed that he did not know REPPART, did not provide REPPART his PII and received no recruiting assistance from REPPART. D.A. directly met with a military recruiter—to who he was not referred by an RA—at his home and at his school. That military recruiter scheduled and accompanied D.A. to an appointment at the MEPS. REPPART did not take any part in the recruiting process. D.A. stated that soon after he enlisted into the OANG he attended a public relations event during which he was asked to take a photograph with REPPART and others. The photograph appeared in a military publication commemorating G-RAP payments made in Ohio. D.A. stated this event was the first and only time he met REPPART.

e.  On July 13, 2006, REPPART logged in to the G-RAP website using his username and password and submitted a nomination for potential soldier D.R., whose name is known to me but identified here by initials. REPPART represented that he met D.R. on or about July 13, 2006. He also represented that D.R. provided his PII to him for the purposes of nominating D.R. through G-RAP. REPPART also represented that he helped D.R. enlist into the OANG. REPPART knew each of these representations to be false. In truth and in fact, REPPART did not know D.R., REPPART did not obtain D.R.'s PII from D.R., and REPPART did not provide recruiting assistance to D.R. Your Affiant interviewed D.R. on August 5, 2014, at which time D.R. confirmed that he did not know REPPART, did not provide REPPART his PII, and received no recruiting assistance from REPPART. D.R. met directly with a military recruiter—to who he was not referred by an RA—at his high school. He later visited the recruiter's office to enlist in the OANG. D.R. stated he met REPPART for the first and only time while D.R., REPPART, and others were photographed at a public relations event. This event occurred after D.R. enlisted in the OANG.

f.  On September 26, 2008, REPPART logged in to the G-RAP website using his username and password and submitted a nomination for potential soldier K.H., whose name is

6

known to me but identified here by initials. REPPART represented that he met K.H. two weeks to one month prior to September 26, 2008. He also represented that K.H. provided his PII to him for the purposes of nominating K.H. through G-RAP. REPPART also represented that he helped K.H. enlist into the OANG. REPPART knew each of these representations to be false. In truth and in fact, REPPART did not know K.H., he did not obtain K.H.'s PII from K.H., and he did not provide recruiting assistance to K.H. Your Affiant interviewed K.H. on October 8, 2014, at which time K.H. confirmed that he did not know REPPART, did not provide REPPART his PII, and received no recruiting assistance from REPPART. K.H. confirmed that he first spoke with a United States Marine Corp recruiter who referred him directly to an OANG recruiter.

    g.    On October 30, 2006, REPPART logged in to the G-RAP website using his username and password and submitted a nomination for potential soldier M.B., whose name is known to me but identified here by initials. REPPART represented that he met M.B. on or prior to September 26, 2008. He also represented that M.B. provided his PII to him for the purposes of nominating M.B. through G-RAP. REPPART also represented that he helped M.B. enlist into the OANG. REPPART knew each of these representations to be false. In truth and in fact, REPPART did not know M.B., he did not obtain M.B.'s PII from M.B., and he did not provide recruiting assistance to M.B. Your Affiant interviewed M.B. on August 28, 2014, at which time M.B. confirmed that he did not know REPPART, did not provide REPPART his PII, and received no recruiting assistance from REPPART M.B. researched the military and approached a military recruiter directly. M.B. and his wife both attended the meetings with the military recruiter and neither has ever met REPPART.

## CONCLUSION

13. Based on the foregoing facts, your Affiant respectfully submits that probable cause exists to believe that from on or about July 19, 2006, to on or about September 20, 2011, as part of a

7

continuing course of conduct, willfully and knowingly did steal, purloin and convert to his own use and, without authority, dispose of property of the United States exceeding $1,000.00 in value belonging to and made under contract with the Department of Defense, a department of the United States, to wit: Guard Recruiting Assistance Program incentives, in the amount of $14,000, in violation of Title 18, Section 641, United States Code.

_____
Jeffrey L. Wilson
Special Agent, United States Army Criminal Investigation Command

Subscribed and sworn to before me this 22nd day of April 2015.

_____
NANCY A. VECCHIARELLI
United States Magistrate Judge